IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GRAHAM DENNIS, et al.,          :

    Plaintiffs,          :

v.          :

                  Civil Action No. GLR-13-3731

BOARD OF EDUCATION OF TALBOT          :
COUNTY, et al.,
                    :

    Defendants.          :

                    :

## MEMORANDUM OPINION

Pending before the Court is Defendants', Board of Education of Talbot County (the "Board"), Karen Salmon, Lynne Duncan, David Stofa, and Sherry Bowen, Motion to Dismiss. (ECF No. 3). Plaintiffs, Graham Dennis and Casey Edsall, are suing Defendants for constitutional violations arising from when they suspended Dennis and Edsall for possessing weapons on school property. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons outlined below, Defendants' Motion will be granted in part and denied in part.

## I.   BACKGROUND[1]

Dennis and Edsall were students at Easton High School in Talbot County, Maryland, and members of the school's lacrosse

---

[1] Unless otherwise noted, the following facts are stated as alleged in the Complaint. (ECF No. 1).

team.[2]  On April 12, 2011, the Department of Juvenile Services informed Duncan, then the Board Student Services Supervisor, that a parent had alleged Easton High lacrosse team members had concealed alcohol in water bottles and consumed it on the bus to and from athletic events.  After discussions with senior staff members, Duncan decided to search the lacrosse team bus prior to its departure for an athletic event.

On April 13, 2011, Duncan, Stofa and Bowen, Easton High's principal and assistant principal, respectively, and other security staff boarded the bus and announced to the lacrosse team that they would be conducting a search.  While giving the students stickers to mark their belongings, but before any belongings were searched, Dennis told Assistant Principal Bowen he had a pocketknife in his bag.  She told Dennis to retrieve it.  He complied.  Dennis surrendered a two-and-a-half-inch blade to Assistant Principal Bowen, who instructed him to leave his bag on his seat and exit the bus.  A subsequent search of his bag returned a Leatherman tool with three tiny blades.  Similarly, Edsall left his bag on his seat and exited the bus.  When searching Edsall's bag, Assistant Principal Bowen found a butane lighter.

Talbot County Public Schools staff contacted police and handed over the small knives and butane lighter when they

---

[2] Dennis and Edsall graduated from Easton High in May 2012.

arrived.   The police arrested Dennis at the scene for possessing the pocketknife on school property.

Following the incident, Principal Stofa suspended Dennis and Edsall for possessing dangerous weapons on school property. Dennis received a ten-day suspension and was further recommended for expulsion from school.   Edsall only received a one-day suspension.   Dennis and Edsall appealed their suspensions to Salmon, then the Superintendent of Talbot County Public Schools. Superintendent Salmon affirmed Dennis's ten-day suspension but declined to expel him from school.   She also affirmed Edsall's one-day suspension.

Dennis and Edsall then appealed their suspensions to the Board, arguing the small knives and butane lighter were tools routinely used to maintain their lacrosse sticks.   The Board affirmed their suspensions nonetheless.   Undeterred, Dennis and Edsall appealed to the Maryland State Board of Education (the "State Board").   On April 10, 2012, the State Board reversed Dennis and Edsall's suspensions, and ordered that their records be expunged.

A year and a half later, Dennis and Edsall filed this action against Defendants in this Court, alleging unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution (Count I) and Article 26 of the Maryland Declaration of Rights (Count II).   (ECF No. 1).   They

3

also allege a violation of procedural due process under the Fourteenth Amendment to the United States Constitution (Count III) and Article 24 of the Maryland Declaration of Rights (Count IV). They bring the Fourth and Fourteenth Amendment claims under 42 U.S.C. § 1983 and ask the Court to take pendent jurisdiction of the state constitutional claims. Notably, in addition to the Board, Dennis and Edsall are suing Superintendent Salmon in her individual capacity, and Duncan, Principal Stofa, and Assistant Principal Bowen in their individual and official capacities. Defendants now move to dismiss. (ECF No. 3).

## II.  DISCUSSION

### A.  <u>Standard of Review</u>

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege enough facts to state a plausible claim for relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555).

Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted). And in doing so, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Lastly, in deciding a motion to dismiss, the Court may rely on documents outside the complaint if they are attached to or referenced in the complaint. E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 450 (4th Cir. 2011) (citations omitted).

B.   **Analysis**

   1.   **Section 1983 Claims Against Defendants in their Official Capacities**

Defendants first argue the § 1983 claims against the Board and individually named Defendants in their official capacities should be dismissed because they are not "persons" under § 1983. Dennis and Edsall seem to confuse this argument with the analysis involving the Eleventh Amendment, contending in

5

response that Defendants cannot assert the Eleventh Amendment to avoid liability under § 1983.  Regardless, Defendants are more persuasive.  Whether Defendants are subject to suit under § 1983 and whether they may assert the Eleventh Amendment are two separate issues.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989).  Of them, the only question relevant here is whether Defendants are "persons" who can be sued under § 1983.  The Court concludes they are not.

Section 1983 allows individuals to sue any "person" who violates their constitutional rights while acting under the color of law.  42 U.S.C. § 1983 (2012).  But state agencies and state officials acting within their official capacities cannot be sued under § 1983 because they are not "persons."  See Will, 491 U.S. at 64; Mayo v. Bd. of Educ. of Prince George's Cnty., 797 F.Supp.2d 685, 689 (D.Md. 2011), aff'd, 713 F.3d 735 (4th Cir. 2013).  County school boards and their officials are considered state agencies and state officials.  Mayo, 797 F.Supp.2d at 689; Rosenfeld v. Montgomery Cnty. Pub. Sch., 41 F.Supp.2d 581, 586 (D.Md. 1999); Beka Indus., Inc. v. Worcester Cnty. Bd. of Educ., 18 A.3d 890, 900 (Md. 2011).  Because the Board and individually named Defendants in their official capacities are a county school board and school officials, they are not "persons" and cannot be sued under § 1983.  The Fourth

and Fourteenth Amendment claims will be dismissed against them accordingly.

> ### 2.  Paul D. Coverdell Act Immunity Afforded to Individual Defendants

Next, Defendants argue the Paul D. Coverdell Teacher Protection Act of 2001 (the "Coverdell Act"), 20 U.S.C. §§ 6731 et seq. (2012), protects the individually named Defendants from suit in their individual capacities.  Dennis and Edsall argue the Coverdell Act protection does not extend to claims alleging constitutional violations.  The Court agrees.

The Coverdell Act allows school officials to use reasonable measures "to maintain order, discipline, and an appropriate educational environment."  Id. § 6732.  Vitally, no teacher, administrator, or individual member of a school board is liable for harm to a student if he was acting within his scope of employment, and the actions complied with the law and were in an effort to discipline a student or maintain control.  Id. §§ 6733(6)(A), 6733(6)(D), 6736(a)(1)-(2).  The immunity, however, is not absolute.  It does not apply to any "misconduct for which the defendant has been found to have violated a Federal or State civil rights law."  Id. § 6736(d)(1)(C).

Without question, Dennis and Edsall assert civil rights violations under the Fourth and Fourteenth Amendments and the parallel Maryland constitutional provisions.  These are the very

type of claims the Coverdell Act expressly excludes from its protection under § 6736(d)(1)(C). See 78 Frances Amendola et al., C.J.S. Schools and School Districts § 505 (2014) ("Professional school employees are not immune from liability under a statute intended to bar tort liability, where the claims against them are based on allegations of breaches of state or federal constitution, and not tort law."). Defendants are thus not immune from those claims here.

Notwithstanding, Defendants argue this decision "render[s] the [Coverdell] Act meaningless" because it would nullify the Act's protection against all federal litigation. (Reply Mem. Supp. Defs.' Mot. Dismiss at 2, ECF No. 9). Their concern is unwarranted: Not all possible federal litigation involving public school officials derives from alleged federal and state constitutional violations, as the Coverdall Act is designed to target tort or statutory causes of action that may, for whatever reason, find their way into federal court. See, e.g., C.B. v. Sonora Sch. Dist., 691 F.Supp.2d 1123, 1148-50 (E.D.Cal. 2009) (dismissing under the Coverdell Act an emotional distress claim against a school district and school official). But where a student-plaintiff sues under § 1983 asserting a federal or state constitutional violation, the Coverdell Act explicitly exempts that type of claim from immunity. The Coverdell Act, therefore,

does not provide a basis to dismiss the claims against the individually named Defendants here.

### 3.  Qualified Immunity of the Individual Defendants

Defendants alternatively argue the claims should be dismissed against the individually named Defendants in their individual capacities because they are entitled to qualified immunity.[3]  School officials performing discretionary functions have qualified immunity – they are shielded from liability for civil damages to the extent "'their conduct does not violate clearly established statutory or constitutional rights.'" Cole v. Buchanan Cnty. Sch. Bd., 328 F.App'x 204, 208 (4th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The traditional two-prong inquiry to determine whether a school official deserves qualified immunity required the Court to examine: "(1) whether the official violated a constitutional right; and if so (2) whether the right was 'clearly established' at the time of its violation." Rock for Life-UMBC v. Hrabowski,

---

[3] Dennis and Edsall argue qualified immunity does not apply to their state constitutional claims and correctly note that Defendants cite no authority showing otherwise.  Be that as it may, Defendants assert qualified immunity from the state constitutional claims, and Maryland law provides a basis for it. See Dehn Motor Sales, LLC v. Schultz, 69 A.3d 61, 72 (Md.Ct.Spec.App. 2013).  Accordingly, the Court separately analyzes whether federal qualified immunity applies to Dennis and Edsall's federal constitutional claims and whether state qualified immunity applies to their state constitutional claims.

411 F.App'x 541, 547 (4th Cir. 2010) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from by Pearson v. Callahan, 555 U.S. 223 (2009)).   But the two-prong inquiry is no longer mandatory.   Courts may now "'exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'"   Id. (quoting Pearson, 555 U.S. at 236).

Indeed, Defendants focus solely on the first prong, arguing that Dennis and Edsall's Fourth and Fourteenth Amendment rights were not violated by the search.   The Court concludes that Dennis and Edsall sufficiently allege Fourth Amendment and Article 26 violations, but do not sufficiently allege Fourteenth Amendment and Article 24 violations.   Specifically as it relates to the qualified immunity of the individually named Defendants in their individual capacities, the Court will deny Defendants' Motion as to Counts I and II, but grant Defendants' Motion as to Counts III and IV.   The Court will also dismiss, for failure to state a claim, Counts III and IV against the remaining Defendants.

### a.   Fourth Amendment Unreasonable Search and Seizure

The Court addresses the Fourth Amendment issue with abundant caution, considering that qualified immunity in this context is typically raised at the motion for summary judgment

stage.[4]  See Whisman ex rel. Whisman v. Rinehart, 119 F.3d 1303,
1309 (8th Cir. 1997).

Nevertheless, Dennis  and  Edsall  adequately  allege  a
plausible Fourth Amendment violation.  They allege Defendants
violated their right to be free from unreasonable searches and
seizures  because  Defendants  lacked  reasonable  suspicion  to
search their bags.  That freedom, undeniably guaranteed by the
Fourth Amendment, extends to school searches.  New Jersey v.
T.L.O., 469 U.S. 325, 333 (1985); DesRoches ex rel. DesRoches v.
Caprio, 156 F.3d 571, 574 (4th Cir. 1998) (citing T.L.O., 469
U.S. at 337)).  In most instances, a reasonable search under the
Fourth  Amendment  is  "'based  on  individualized  suspicion  of
wrongdoing.'"  Id. at 574 (quoting Chandler v. Miller, 520 U.S.
305,  313  (1997)).  Though  individualized  suspicion  is  not
necessarily  an  essential  element  for  school  searches,  the
reasonableness  of  a  suspicion-based  search  by  a  school  official
is determined by considering (1) if the action was justified at
its  inception,  and  (2)  if  the  search  was  permissible  in  scope.
Id. at 574-75 (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968))
(internal quotation marks omitted).

---

[4] In fact, none of the courts in the cases Defendants rely
upon decided the Fourth Amendment issue at the motion to dismiss
stage.  And in Moxley v. Town of Walkersville, 601 F.Supp.2d 648
(D.Md.  2009),  which  Defendants  rely  on  to  urge  an  early
resolution of the qualified immunity issue, this Court concluded
the defendants there were not entitled to qualified immunity at
the motion to dismiss stage.  Id. at 665.

Where there is no individualized suspicion, the reasonableness determination requires the Court to examine the competing private and public interests in a context-specific inquiry. Id. at 574 (quoting Chandler, 520 U.S. at 317–18). There, the suspicion-less search "will be upheld only where the government's interests in conducting the search are substantial – important enough to override the individual's acknowledged privacy interest." Id. (quoting Chandler, 520 U.S. at 318) (internal quotation marks omitted).

Dennis and Edsall certainly have an expectation of privacy in their bags, even though that expectation is reduced because they are student athletes. T.L.O., 469 U.S. at 337–38; id. at 348 (Powell, J., concurring); Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 657 (1995). Moreover, the facts indicate no reason to suspect Edsall, who did not admit to possessing a dangerous weapon prior to the search, of any wrongdoing before searching his bag.[5] As for Dennis, who admitted to possessing a dangerous weapon only after school officials instructed him to place a sticker on his bag, Dennis and Edsall raise a valid question as to what constituted the inception of the search. They argue the inception may have been when Defendants gained

_____

[5] The Complaint does not allege that Edsall admitted to having the butane lighter before officials searched his bag. The Court accepts this factual scenario as true for the purposes of this Motion, even though Defendants dispute whether Edsall alerted school officials beforehand.

access to Dennis's bag by asking him to place a sticker on it, rather than when officials physically searched his bag. See United States v. Mowatt, 513 F.3d 395, 400 (4th Cir. 2008) (noting that a search occurs for Fourth Amendment purposes when officials gain access to property in response to a demand under color of authority), abrogated on other grounds by Kentucky v. King, 131 S.Ct. 1849 (2011). The difference is crucial in that Defendants knew about Dennis's dangerous weapon when they physically searched his bag but had no reason to suspect Dennis in particular of any wrongdoing when they instructed him to place a sticker on it.

Because both searches may have been suspicion-less, it is unclear whether Defendants' justification for initiating the searches outweighed Dennis and Edsall's lesser expectation of privacy and whether, as a result, qualified immunity would apply. The Fourth Amendment claim would benefit from a more complete factual record and greater insight into the issues raised. Accordingly, the Court will decline to dismiss it on qualified immunity grounds.

### b.   Article 26 of the Maryland Declaration of Rights

Similar to their Fourth Amendment claim, Dennis and Edsall allege Defendants violated Article 26 of the Maryland Declaration of Rights because they lacked reasonable suspicion to search their bags. Article 26, which outlines the

requirements for a warrant, has been consistently construed as being in pari materia with the Fourth Amendment.  Scott v. State, 782 A.2d 862, 873 (Md. 2001).  Therefore, for the same reasons the Court declines to dismiss Dennis and Edsall's Fourth Amendment claim, the Court will also decline to dismiss their Article 26 claim on the basis of qualified immunity.

### c.    Fourteenth Amendment Procedural Due Process

Dennis and Edsall's Fourteenth Amendment claim alleges that they were not provided adequate notice that the small knives and butane lighter would be dangerous weapons, depriving them of their interest in a free public education in violation of due process.  The Fourteenth Amendment forbids state officials from depriving any person of property without due process of the law. Goss v. Lopez, 419 U.S. 565, 572 (1975).  Where the state provides free public education, students have a legitimate property interest in that education that cannot be deprived without notice and the opportunity to be heard.  Id. at 574, 579.

Dennis and Edsall argue nothing in the 2010-2011 Easton High School Student Handbook (the "Student Handbook") informed them that they could be suspended for possessing small knives and a butane lighter.  They argue "dangerous weapons" is undefined in the Student Handbook and that they possessed the small knives and butane lighter, not as "dangerous weapons," but

14

for use as tools in maintaining their lacrosse sticks. The arguments are, in essence, ones for vagueness. "A law is unconstitutionally vague if it fails to establish standards for the government and public that are sufficient to guard against the arbitrary deprivation of liberty interests." Hardwick ex rel. Hardwick v. Heyward, 711 F.3d 426, 442 (4th Cir. 2013) (quoting City of Chicago v. Morales, 527 U.S. 41, 52 (1999)) (internal quotation marks omitted). A law fails to establish these standards if ordinary people cannot understand what conduct is prohibited. Id. (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). Dennis and Edsall's arguments must fail for a number of reasons.

First, due process does not require school policies to be as specific or exhaustive as Dennis and Edsall demand. Rather, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code." Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 686 (1986). Accordingly, the Student Handbook provisions prohibiting Dennis and Edsall's conduct are sufficient. The School Handbook provides a list of infractions for which students may be suspended or recommended for expulsion. EHS 2010-2011 Warrior Student Handbook, Talbot County Public Schools, 15 (last visited Apr. 15, 2014),

15

http://www.tcps.k12.md.us/files/9812/8574/6911/EHS_StudentHandbo ok2010.pdf.   Among the infractions, it specifically lists "Possession of Contraband (Beepers/pagers, Cellular Phones, Pepper Mace, Laser Pointers, Squirt Guns, Projectile Shooters, Dangerous Weapons)."   Id.

Although "Dangerous Weapons" is undefined, there is no denying that Dennis's small knives fall squarely within that category.   Regarding Edsall's butane lighter, the Student Handbook need not be so specific as to classify every conceivable instrument a school official may find dangerous. Thus, to the extent it is not arbitrary or discriminatory, the butane lighter's inclusion as a dangerous weapon here does not violate due process.   See Hardwick, 711 F.3d at 442 ("[T]he [vagueness] doctrine protects against 'arbitrary and discriminatory enforcement of the law.'" (quoting Morales, 527 U.S. at 56)).   It was neither arbitrary nor discriminatory that school officials construed butane lighters as a dangerous weapon here because they explicitly do so in other contexts of which Dennis and Edsall were aware. (See Compl. Ex. E, at 7, ECF No. 1-6) (noting that butane lighters are listed as dangerous contraband on parking permit applications).

Second, their intention to use the small knives and butane lighter as tools is irrelevant.   School policy expressly prohibits possession of dangerous items without regard for

intent "to [e]nsure a safe and orderly atmosphere." EHS 2010-2011 Warrior Student Handbook at 15.  School policies are not open to due process challenges simply because a student wishes to use a dangerous weapon for a non-deadly purpose.[6]

Lastly, to the extent their argument genuinely implicates the notice requirement, Dennis and Edsall's suspensions meet the due process requirements established in Goss.  Notice required only that Dennis and Edsall were made aware of the charges against them, written or orally, and the evidence upon which those charges are based.  See Goss, 419 U.S. at 581.  They were told on several occasions what their infractions were and the basis for which they would be suspended.  Principal Stofa informed Dennis and Edsall that the grounds for suspension were for possessing a dangerous weapon on school property.  Both suspensions were affirmed in writing, once by Superintendent Salmon and again by the Board, and later reversed in writing by the State Board.  Dennis and Edsall were aware at all times of

---

[6] Indeed, in its decision affirming Edsall's one-day suspension, the Board noted that the possession of a dangerous weapon is a strict liability offense.  (Compl. Ex. E, at 9).  As unfortunate as these circumstances are, the Court must adhere to the notion "'that ignorance of the law will not excuse any person'" from liability.  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 581 (2010) (quoting Barlow v. United States, 32 U.S. 404, 411 (1833)).

the charges levied against them and thus received constitutionally sufficient notice.[7]

Accordingly, Dennis and Edsall's Fourteenth Amendment claim does not sufficiently allege a Fourteenth Amendment violation, and the Court will dismiss it against the individually named Defendants in their individual capacities because they are entitled to qualified immunity. Moreover, because it is insufficiently alleged, the claim will also be dismissed as to the remaining Defendants. See Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 n.10 (4th Cir. 2006) (citing 5A Wright & Miller, Federal Practice & Procedure § 1357 (2d ed. 1990)) (noting that the Court may dismiss a complaint for failure to state a claim

---

[7] Dennis and Edsall also argue they received insufficient notice because the school failed to follow its own procedure in suspending students only after "repeated rule infraction, and after all other available disciplinary means have been exhausted." (Pls.' Mem. Opp'n Defs.' Mot. Dismiss at 14, ECF No. 6). This argument must also fail. Even though the school failed to follow its own procedure, its disciplinary actions adhered to the minimum due process requirements. See Ratner v. Loudoun Cnty. Pub. Sch., 16 F.App'x 140, 142 (4th Cir. 2001) (upholding a school's procedure as constitutional, even where it was imperfect). Moreover, there is nothing to suggest Defendants did not comport with Maryland suspension procedures or the Board's due process requirements. See Md. Code Ann., Educ. § 7-305(a) (West 2014); Board Policies, Talbot County Public Schools, 10.22 (last visited Apr. 15, 2014), http://www.tcps.k12.md.us/files/1313/4989/2220/10.22_STUDENT_SUS PENSION.pdf (requiring the student and his parent be given notice of the charges against him and have the opportunity to present his side of the story).

sua sponte if it plainly fails to state a claim for relief on
its face).

### d. Article 24 of the Maryland Declaration of Rights

Similar to their Fourteenth Amendment claim, Dennis and
Edsall allege they were deprived of their right to receive a
free public education in violation of Article 24 of the Maryland
Declaration of Rights.   Much like the Fourteenth Amendment,
Article 24 protects an individual's procedural due process
interest.   Samuels v. Tschechtelin, 763 A.2d 209, 230
(Md.Ct.Spec.App. 2000).   As such, Maryland "courts have long
equated the Due Process Clause and Article 24." Id.   Therefore,
for the same reasons the Court will dismiss Dennis and Edsall's
Fourteenth Amendment claim, the Court will also dismiss, on
qualified immunity grounds, their Article 24 claim as to the
individually named Defendants in their individual capacities.
The Court will also dismiss their Article 24 claim as to the
remaining Defendants because it is insufficiently alleged.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate
Order, grant in part and deny in part Defendants' Motion to
Dismiss.   (ECF No. 3).   Count I will be dismissed against the
Board and individually named Defendants in their official
capacities.   Counts III and IV will be dismissed against all

Defendants.     The   Court   will   deny,   however,   the   Defendants'
Motion as to Count II and the remaining Defendants in Count I.[8]

Entered this 8th day of May, 2014

/s/

_____
George L. Russell, III
United States District Judge

---

[8] The  remaining  claims  and  Defendants  will  be  as  follows:
(1)  the  individually  named  Defendants  in  their  individual
capacities  remain  in  Count  I;  and  (2)  the  Board  and  the
individually named Defendants in their official and individual
capacities remain in Count II.  Count I is the sole remaining
claim in which the Court has federal question jurisdiction.  As
such,  for  Count  II,  the  Court  will  exercise  pendent  party
jurisdiction  over  the  Board  and  the  individually  named
Defendants in their official capacities.  See Price v. Pierce,
823 F.2d 1114, 1119 (7th Cir. 1987); Moore v. Marketplace Rest.,
Inc., 754 F.2d 1336, 1359-60 (7th Cir. 1985).